UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARY BETH AVERWEG, | CASE NO. 1:18CV1640 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| ANDREW M. SAUL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION & ORDER |
| Defendant. | |

Plaintiff Mary Beth Averweg ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. In her brief on the merits, Plaintiff asserts that substantial evidence does not support the administrative law judge ("ALJ")'s residual functional capacity ("RFC") for her because he failed to properly assess her limitations in handling and fingering bilaterally and the side effects of her medication. ECF Dkt. #15. For the following reasons, the Court REVERSES the decision of the ALJ and REMANDS the instant case to the ALJ for reconsideration and reevaluation of Plaintiff's RFC.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed an application for DIB on April 14, 2015 alleging disability beginning January 31, 2014 due to breast cancer, mastectomy, lymphedema, neuropathy in her feet, and memory loss. ECF Dkt. #12 ("Tr.") at 60, 147, 175.[2] The Social Security Administration ("SSA") denied her application initially and upon reconsideration. *Id.* at 93-109. Plaintiff requested a hearing before

---

[1]On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

an ALJ, and the ALJ held a hearing on March 24, 2017, where Plaintiff was represented by counsel and testified. *Id*. at 31, 110-111. A vocational expert ("VE") also testified. *Id.* at 31.

On December 28, 2017, the ALJ issued a decision denying Plaintiff's application for DIB. Tr. at 15-24. Plaintiff requested that the Appeals Council review the ALJ's decision and the Appeals Council denied her request for review on March 7, 2018. *Id*. at 1-7.

On July 17, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. She filed a merits brief on October 19, 2018 and Defendant filed a merits brief on January 30, 2019. ECF Dkt. #s 15, 18. Plaintiff filed a reply brief on February 12, 2019. ECF Dkt. #19.

## II. RELEVANT PORTIONS OF ALJ'S DECISION

On December 28, 2017, the ALJ issued a decision first noting that Plaintiff had amended her disability onset date to August 15, 2014. Tr. at 15. He then indicated that he had submitted medical expert interrogatories to a medical expert ("ME") after the ALJ hearing, which he also sent to Plaintiff's counsel and Plaintiff's counsel responded . *Id.*

The ALJ went on to find that Plaintiff did not engage in substantial gainful activity since her onset date. Tr. at 17. He further found that since that date, Plaintiff had the severe impairments of breast cancer/status post bilateral mastectomies and peripheral neuropathy. *Id*. He found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.* at 18-19. After considering the record, the ALJ determined that Plaintiff had the RFC to perform light work with the following limitations: occasional reaching over the head with the right upper extremity; handling items frequently with the left hand and the right hand; frequent fingering bilaterally; climbing ramps and stairs occasionally; frequently push/pull with all four extremities; never climbing ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, and crouching; occasional crawling; never working at unprotected heights or around moving mechanical parts; being off-task less than 10% of the time in an 8-hour workday. *Id.* at 19.

Based upon Plaintiff's age, education, work experience, the RFC, and the VE's testimony, the ALJ determined that Plaintiff could return to her past relevant work as an administrative assistant

and as a title clerk. Tr. at 23-24. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, and she was not entitled to DIB. *Id.* at 24.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## V.     LAW AND ANALYSIS

Plaintiff asserts that substantial evidence does not support the ALJ's RFC for her because the record supports a limitation to "occasional" handling and fingering abilities as opposed to the "frequent" limitations that the ALJ determined. ECF Dkt. #15 at 7-9. She also contends that the ALJ erred in finding that she had no limitations from the side effects of taking Gabapentin for her peripheral neuropathy. *Id*. at 9-11. For the following reasons, the Court finds that the ALJ sufficiently considered the alleged memory and concentration side effects of Plaintiff taking Gabapentin, but he lacked substantial evidence to support his RFC for Plaintiff.

### A.     Medication Side Effects of Gabapentin

The Court first addresses Plaintiff's assertion of ALJ error in failing to consider the side effects of memory and concentration difficulties from her taking of the medication Gabapentin for her peripheral neuropathy. Plaintiff contends that she has memory and concentration difficulties due to taking Gabapentin, and she testified to such difficulties at the ALJ hearing and reported them in her function report. ECF Dkt. #15 at 10, citing Tr. at 40-41, 194. She also asserts that she felt sick to her stomach and tired due to the medication. ECF Dkt. #15 at 10, citing Tr. at 194. Plaintiff

further contends that Gabapentin is known to cause drowsiness and dizziness and cites the Court to webmd.com. ECF Dkt. #15 at 10, fn. 3, citing https://ww.webmd.com/drugs/2/drug-14208-8217/gabapentin-oral/gabapentin-oral/details.

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529, SSR 16-3p[3]. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir.1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038–1039 (6th Cir.1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039–40. The Sixth Circuit has held that the ALJ must

---

[3] SSR 16-3p superseded SSR 96-7p effective March 28, 2016.

evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 Fed.Appx. 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). The hypothetical individuals that the ALJ presents to a VE must provide for medication side effects as well. *See White v. Comm'r of Soc. Sec.*, 312 Fed.Appx. 779, 789-90 (6th Cir. 2009).

In his decision, the ALJ in the instant case could have more thoroughly addressed the side effects from taking Gabapentin that Plaintiff raises in her brief. However, the Court finds that the ALJ did sufficiently consider these side effects in his decision and substantial evidence supports his decision not to include any restrictions relating thereto in his RFC. The ALJ specifically cited to Plaintiff's testimony at the hearing that she had difficulties with memory, attention, and concentration due to taking Gabapentin. Tr. at 20. He also noted that Dr. Goel prescribed Gabapentin for Plaintiff for her neuropathic pain. *Id*. at 19, 21, 22. The ALJ did not report the dosage or effectiveness of Gabapentin, but he did discuss the findings of agency examining psychologist Dr. Evans, Ph.D., who evaluated Plaintiff and found that she had no psychiatric disorders that met the DSM-5 criteria. *Id.* at 21, citing Tr. at 449. Dr. Evans also opined that Plaintiff showed good concentration and attention throughout his entire evaluation with her and she was able to focus with no difficulties. *Id.* at 449. The ALJ additionally noted that Plaintiff reported to Dr. Evans that she had a checking and savings account, and she cooked, cleaned, and did laundry at home, which were activities that required attention and concentration. *Id.* at 22, citing Tr. at 448-449. Moreover, as Defendant points out, no medical source opined that Plaintiff had memory or concentration difficulties resulting from taking Gabapentin or that she reported such difficulties to her medical providers.

Accordingly, the Court finds that while the ALJ should have more thoroughly addressed Plaintiff's asserted side effects of memory and concentration difficulties from taking Gabapentin, he nevertheless adequately considered these side effects and substantial evidence supports his decision finding that Plaintiff had no memory or concentration limitations in her RFC resulting from taking this medication.

### B. RFC

Plaintiff also asserts that the ALJ committed error by failing to properly assess her RFC. ECF Dkt. #15 at 7-9. She cites to her diagnoses of probable chemotherapy-induced peripheral neuropathy of the upper extremities and lymphedema of the upper extremities, and she refers to the ME's opinion that she has trouble using her arms on a regular basis due to peripheral neuropathy. *Id.* Plaintiff contends that the record supports more restrictive limitations in handling and fingering than that found by the ALJ, and she cites to medical records and the opinion of the ME in support. ECF Dkt. #15 at 8-9. She further asserts that the ALJ failed to articulate why he did not find her more limited in fingering and handling. *Id.* at 8.

A claimant's RFC is an assessment of the most that a claimant "can still do despite h[er] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 404.1545(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. §§ 404.1545(a)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. § 404.1546(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."). SSR 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess his or her work-related abilities on a function-by-function basis. *Id.* Further, it states that the RFC assessment must be based on all of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, the need for a structured living environment and work evaluations. *Id.* Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

The Court finds that the instant case must be remanded for evaluation and analysis of the RFC in this case. The Court notes that the ALJ began his RFC analysis and discounted Plaintiff's complaints of pain and limitations by reviewing the medical evidence. He indicated that Plaintiff had a left complete mastectomy with a lymph node biopsy on August 15, 2014 and a right mastectomy on September 18, 2014. Tr. at 20, citing Tr. at 308, 321. The medical record confirms the August 15, 2014 left complete mastectomy. *Id.* at 308. However, the citation made by the ALJ to a right mastectomy on September 18, 2014 is not confirmed by that record. *Id.* at 321. The September 18, 2014 document is a treatment note from oncologist Dr. Peleg which indicates Plaintiff's "Treatment to Date" as including a right mastectomy, 4 cycles of Cytoxan, 12 weeks of Taxol, radiation therapy, and an August 15, 2014 left complete mastectomy. *Id.* It does not confirm that Plaintiff had a right mastectomy on that particular date, but reflects that she did have a prior right mastectomy.

The ALJ also noted that Plaintiff's hysterectomy on March 13, 2015 after testing showed a theoretically increased ovarian cancer risk. *Id.* at 21, citing Tr. at 273. He further noted her diagnoses of empyema, chronic obstructive pulmonary disease with chronic bronchitis, and lung nodules. *Id.* at 22. He cited to Dr. Peleg's treatment note indicating that he treated Plaintiff with chemotherapy and treated her for her neuropathic pain in both arms. Tr. at 21, citing Tr. at 569-571. The ALJ noted Dr. Peleg's report that Plaintiff's arms were swollen and her complaint that the compression sleeve that she was prescribed was not helping her. *Id.* The ALJ further cited to Dr. Peleg's clinical examination on that date which showed that Plaintiff had a normal range of motion, normal strength, no tenderness, no deformity, and a normal gait. *Id.* at 571. The ALJ also cited to

a cervical MRI which showed no metastatic changes and stable mild disc bulges at C5-C6 and C6-C7 without significant stenosis or cord compression. *Id.* at 21, citing Tr. at 712. In addition, the ALJ repeatedly refers in his decision to an initial evaluation note dated May 27, 2015 by neurosurgeon Dr. Goel in which Plaintiff's clinical examination and lumbar MRI were normal and her cervical MRI showed only minor changes without cord or nerve root compression. Tr. at 21, citing Tr. at 415. Dr. Goel indicated in this note that Plaintiff presented to him with upper extremity numbness without pain and without weakness for the last two months. *Id.* at 415. He also noted that Plaintiff displayed difficulty communicating independently and she related that she had difficulty grooming herself and dressing/undressing without assistance. *Id*. at 416. He diagnosed probable chemotherapy-induced peripheral neuropathy with no structural abnormality on MRIs. *Id*. at 418. He prescribed Gabapentin, 300 milligrams, three times per day. *Id*.

The ALJ then reviewed the opinion evidence, which consisted of an agency examining psychological evaluation, an agency reviewing physician opinion, and the responses of the ME to the interrogatories submitted by the ALJ to him following the hearing. In the ME's November 15, 2017 response letter to those interrogatories, the ME noted Plaintiff's mastectomies, chemotherapy, radiation, and recurrent angioedema from breast cancer. Tr. at 1124. He further indicated that Plaintiff still had arm pain and trouble using her arms on a regular basis due to pain and swelling after surgery. *Id*. He also noted that Plaintiff had COPD and actinonmyces infections, for which she was taking daily antibiotics. *Id*. The ME indicated that Plaintiff's COPD was well-controlled and minimal findings were noted on the consultative physical examination. *Id*.

The ME then referred to a cardiac stress test record, which noted that Plaintiff achieved 7 METS. Tr. at 1124. The ME concluded that this was "consistent with light exertional level." *Id*. However, after making this conclusion, the ME continued:

> The totality of the impairments is considered, breast cancer and S/P fatigue from chemo, radiation along with edema of the arms, pain, neuropathy etc.
>
> RFC would be reduced to a sedentary level based on the current subjective and objective findings.

*Id.* In addressing the ME's responses to his interrogatories, the ALJ attributed great weight only to the portion of the response in which the ME had check-marked "No" to the interrogatory asking if

-9-

any of Plaintiff's impairments met or equaled any of the impairments in the Listing of Impairments. Tr. at 23, citing Tr. at 1122. The ALJ attributed little weight to the ME's written opinion that Plaintiff's RFC would be reduced to a sedentary level, finding that the opinion was internally inconsistent because while the ME opined that Plaintiff's cardiac stress test finding of 7 METS was consistent with a light exertional level, he concluded that Plaintiff's exertional level would be reduced to sedentary based on the current subjective and objective findings. *Id.* The ALJ further found that Plaintiff's statements about her daily living activities were also consistent with the ability to perform light work, as she reported that she cooked, cleaned, did the laundry, and grocery shopped. *Id.* at 23, citing Tr. at 448. The ALJ also cited to the Dr. Goel's May 27, 2015 initial evaluation findings that while Plaintiff reported cervical pain with numbness radiating down her arms and an inability to groom or bathe herself without assistance, the clinical examination findings showed that Plaintiff had 5/5 strength in all extremities, negative Babinski or Hoffman signs, intact sensation, 2+ reflexes, and a cervical MRI showing only minor changes without spinal cord compression or nerve root compression. *Id.* at 23, citing Tr. at 416, 418. *Id.* at 23, citing Tr. at 415.

The Court finds that substantial evidence does not support the ALJ's treatment of the ME opinion and therefore the RFC. There is no internal inconsistency in the ME's opinion. The ME clearly stated that Plaintiff's cardiac stress test result of 7 METS was consistent with light work, but he would reduce Plaintiff's exertional level to sedentary based on the "current and objective findings." *Id.* at 1124. The ALJ's other reasons supporting his RFC for Plaintiff and attributing little weight to the ME's opinion also lack substantial evidence. The ALJ relied upon Plaintiff's daily living activities, indicating that those activities were consistent with performing light work. Tr. at 23. He acknowledged Plaintiff's reports and testimony that her neuropathy caused her to step off of her deck and break her right ankle, caused her arms and hands to go numb, made her unable to type because her hands would cramp and go numb, and caused her an inability to stand for periods of time. Tr. at 20, citing Tr. at 40-41. Plaintiff testified at the hearing that chemotherapy caused her neuropathy and the neuropathy had worsened since she stopped chemotherapy in December of 2014 or January of 2015. *Id.* at 40-41. She related that she had difficulties opening bottles, her nerve pain was constant, and ever since she had chemotherapy, she has had to nap everyday for at least two

hours. *Id.* at 45-52. The ALJ specifically referred to Plaintiff's daily living activities of cooking, cleaning, doing laundry, and going to the grocery store as support for his RFC and treatment of the ME's opinion. Tr. at 22-23. However, Plaintiff testified that she prepared only one meal a day, which was dinner, and she did so by putting a roast in the crockpot or pork and sauerkraut. *Id.* at 43. When the ALJ asked about side dishes, Plaintiff responded that she microwaves vegetables and tries to peel potatoes, but cannot use a peeler. *Id*. at 43-44. She further indicated that she has cut her fingers when using a knife to cut the potatoes. *Id.* at 45. Plaintiff also testified that she tries to clean one room per day or do a load of laundry, but she then must nap for two and a half hours after because she is exhausted. *Id*. at 45. The ALJ also relied upon the normal clinical examinations, normal lumbar MRI and the cervical MRI which showed minor changes with no spinal cord or nerve root compression. *Id.* at 23. However, he did not address Dr. Goel's August 10, 2016 treatment note where he noted that Plaintiff had a positive Tinel's sign over her left ulnar nerve and she had abnormal sensation. Tr. at 759. He also did not address that Dr. Goel assessed Plaintiff with possible left ulnar neuropathy versus chemotherapy-induced peripheral neuropathy, his referral of Plaintiff to physical medicine rehabilitation, and his ordering of an EMG to evaluate Plaintiff's neuropathy. *Id.*

Accordingly, the Court finds that the ALJ lacked substantial evidence for his RFC and remand is required of Plaintiff's case. While Plaintiff did not specifically raise the exertional level as ALJ error, the review of the ALJ's treatment of the ME opinion and the difference in the exertional levels opined may seriously impact the decision in this case as the ALJ limited Plantiff to light work with frequent handling and fingering limitations, and the ME opined sedentary work based upon considerations of the objective findings and Plaintiff's subjective complaints, such as fatigue from chemotherapy and her arm pain and neuropathy.

## **VI.** **CONCLUSION**

For the above reasons, the Court orders that the decision of the ALJ is hereby REVERSED and this case is REMANDED for the ALJ to reconsider his RFC determination, including consideration of the ME's responses to the ALJ's interrogatories.

Date: September 12, 2019         */s/George J. Limbert*
                                  GEORGE J. LIMBERT
                                  UNITED STATES MAGISTRATE JUDGE